176 So. 301

## CITY OF BIRMINGHAM v. SOUTHERN BELL TELEPHONE & TELEGRAPH CO. et al.

### 3 Div. 185.

Supreme Court of Alabama.

Oct. 7, 1937.

Horace C. Wilkinson, of Birmingham, for appellant.

Steiner, Crum & Weil, of Montgomery, Stokely, Scrivner, Dominick & Smith, of Birmingham, and E. D. Smith and John T. Goree, of Atlanta, Ga., for appellee Southern Bell Telephone & Telegraph Co.

Hill, Hill, Whiting & Rives, of Montgomery, for appellee, Alabama Public Service Commission.

GARDNER, Justice.

Upon petition of the City of Birmingham, among others, and after a hearing and consideration of voluminous evidence, extending over a period of several months, the Alabama Public Service Commission entered an order declaring existing telephone rates unreasonable and placed in effect a schedule of rates amounting in the aggregate to a reduction of $250,000 annually, and reducing the charge for hand sets from 25 to 15 cents per month. From this order the City of Birmingham prosecuted an appeal to the circuit court of Montgomery, where the appeal was dismissed upon motion seasonably interposed.

The city's right of appeal under the broad language of the Act approved July 10, 1935 (Gen. Acts 1935, p. 624), is strenuously challenged, and the argument here for dismissal of the appeal has assumed a wide range, with varying reasons in support of the trial court's ruling.

We are persuaded the dismissal was justified upon a fundamental principle, presently to be stated, and therefore we pretermit a consideration of all other questions.

"It may be stated as a well settled general rule that the existence of an actual controversy is an essential requisite to appellate jurisdiction. * * * Since an actual controversy is necessary, it is not within the province of appellate courts to decide abstract, hypothetical, or moot questions, disconnected from the granting of actual relief or from the determination of which no practical relief can follow." 4 C.J.S. Appeal and Error, § 40, pp. 117, 118.

Our decisions are in harmony with this generally accepted rule. "Ordinarily an appellate court will not entertain appeal from the results of its action when its decision will not affect any substantial right of a party in the pending matter." United States Savings & Loan Co. v. Leftwich, 132 Ala. 131, 31 So. 474, 475. "A party litigant in whose unqualified favor the decree concludes, and who can take no manner of benefit from a reversal or modification of the decree cannot appeal

therefrom." Freeman v. Blount, 172 Ala. 655, 658, 55 So. 293, 294. Following this line of reasoning, the appeal was dismissed by this court in Alabama Power Co. v. City of Sheffield, 232 Ala. 53, 166 So. 797, and by the Court of Appeals in Caldwell v. Loveless, 17 Ala. App. 381, 85 So. 307.

■ Referring to appeals from orders of the Public Service Commission, it is provided in section 9837, Code 1923: "The appellate court shall have no power to modify said action or order appealed from, but shall either affirm or annul and vacate the same."

The order of the Public Service Commission in this cause did not render the matter of rates res judicata (51 C.J. 68), and the annulment of the order is therefore not a condition precedent to a petition before the commission for a further reduction in rates. It is apparent, therefore, that, if obedience to this statute is to be observed, neither an affirmance nor annulment of the order would result in any practical relief. And, as previously noted, it is not within the province of appellate courts to decide mere abstract, hypothetical, or moot questions, and such appeals should be dismissed.

■ Counsel for the city recognize the force of this statute, and vigorously argued against its constitutional validity upon the theory it constitutes an unwarranted invasion of the judicial function of the court.

We have carefully considered the many cases cited in brief in support of the invalidity of this statute upon this ground, among them the following: Otis Elevator Co. v. Industrial Commission, 302 Ill. 90, 134 N.E. 19; State ex rel. Columbia Tel. Co. v. Atkinson et al., 271 Mo. 28, 195 S.W. 741; Parkison v. Thompson, 164 Ind. 609, 73 N.E. 109, 115, 3 Ann.Cas. 677; Thoe v. Chicago, M. & St. P. R. R. Co., 181 Wis. 456, 195 N.W. 407, 29 A.L.R. 1280; In re Opinions of Justices, 251 Mass. 569, 147 N.E. 681; United States v. Klein, 13 Wall. (80 U.S.) 128, 20 L.Ed. 519; State v. Hopper, 71 Mo. 425, 431; Clapp v. Ely, 27 N.J.Law 622; Lewis v. Webb, 3 Me. (3 Greenl.) 326; Denny v. Mattoon, 2 Allen (Mass.) 361, 79 Am.Dec. 784; Vaughan v. Harp, 49 Ark. 160, 4 S.W. 751, 752; Houston v. Williams, 13 Cal. 24, 25, 73 Am.Dec. 565; DeChastellux v. Fairchild, 15 Pa. 18, 20, 53 Am.Dec. 570.

But these authorities do not deal with proceedings of the kind here involved, which are of legislative and not judicial character, and are therefore inapplicable. So considered, therefore, the statute but expresses the generally accepted rule as found stated in 51 Corpus Juris 78, as follows: "The power of the court, on appeal from an order of a public utility commission, is ordinarily merely that of affirmance or reversal of the order made, except that, when an order is separable, it may be reversed in part and in part affirmed."

■ As we have observed, the limitation of judicial review grows out of the character of the proceedings involved. That rate making is a legislative and not a judicial function is well established. As said by this Court in Gulf Compress Co. v. Harris, Cortner & Co., 158 Ala. 343, 48 So. 477, 481, 24 L.R.A.(N.S.) 399: "The law, we think, is too well settled to admit of doubt that the prescribing of rates for a 'public service' corporation or one 'affected with a public interest,' is a legislative, and not a judicial, function. To this effect are the adjudications both state and federal." See, also, Railroad Commission v. Ala. North. Rwy. Co., 182 Ala. 357, 62 So. 749; Alabama Water Co. v. City of Attalla, 211 Ala. 301, 100 So. 490; Alabama Public Service Com. v. Mobile Gas Co., 213 Ala. 50, 104 So. 538, 41 A.L.R. 872; Alabama Power Co. v. Alabama Public Service Comm., 214 Ala. 164, 107 So. 71.

In Federal Radio Comm. v. General Electric Co., 281 U.S. 464, 50 S.Ct. 389, 390, 74 L.Ed. 969, the Supreme Court of the United States refused to review an administrative order of the Radio Commission, and dismissed the writ of certiorari. After making reference to the fact that the courts of the District of Columbia were not created under the judicial article of the Constitution, but were legislative courts, the opinion proceeds: "But this court cannot be invested with jurisdiction of that character, whether for purposes of review or otherwise. It was brought into being by the judiciary article of the Constitution, is invested with judicial power only, and can have no jurisdiction other than of cases and controversies falling within the classes enumerated in that article. It cannot give decisions which are merely advisory; nor can it exercise or participate in the exercise of functions which are essentially legislative or administrative." And in St. Joseph Stock Yards Co. v. United

States, 298 U.S. 38, 56 S.Ct. 720, 725, 80 L.Ed. 1033: "The fixing of rates is a legislative act." And in Louisville & Nashville R. R. Co. v. Garrett, 231 U.S. 298, 34 S. Ct. 48, 51, 58 L.Ed. 229: "It has frequently been pointed out that prescribing rates for the future is an act legislative, and not judicial, in kind. * * * It pertains, broadly speaking, to the legislative power. The legislature may act directly, or, in the absence of constitutional restriction, it may commit the authority to fix rates to a subordinate body. * * * If the commission establishes rates that are so unreasonably low as to be confiscatory, an appropriate mode of obtaining relief is by bill in equity to restrain the enforcement of the order."

The division of our government into three separate departments, legislative, executive, and judicial, under section 42 of our Constitution, with the prohibition against either exercising the powers of the other, "to the end that it may be a government of laws and not of men," as provided in section 43 thereof, is discussed in Fox v. McDonald, 101 Ala. 51, 13 So. 416, 21 L.R.A. 529, 46 Am.St.Rep. 98, and State ex rel. v. Lane, 181 Ala. 646, 62 So. 31, and needs no further elaboration here.

As was observed by the Supreme Court of Oklahoma in Oklahoma Cotton Ginners' Ass'n v. State, 174 Okl. 243, 51 P.(2d) 327, 333, and applicable here: "The division of the government into three distinct departments, neither exercising the functions of either of the other departments, is one of the fundamental concepts of our form of government, and constitutes one of the foundation stones upon which the freedom, liberty, and rights of the citizens in the final analysis rest."

■ It will not, therefore, be considered that any right of appeal to the circuit court was intended to clothe that court with legislative power to fix rates. But, as observed in Ohio Valley Water Co. v. Ben Avon Borough, 253 U.S. 287, 40 S.Ct. 527, 528, 64 L.Ed. 908, when a commission prescribes a complete schedule of future rates, there must also be provided by the state, if the owner claims confiscation of his property will result, "a fair opportunity for submitting that issue to a judicial tribunal for determination upon its own independent judgment as to both law and facts; otherwise the order is void because in conflict with the due process clause, Fourteenth Amendment."

■ As we have heretofore observed, the matter of rate making is legislative, and the courts have no right to sit as a board of review to substitute their judgment for that of the Legislature, or its agents in matters within the province of either. But it may be well here to note exceptional instances in which the court does so sit, due, however, to constitutional provisions to that end. Illustrative is the case of Prentis v. Atlantic Coast Line Co., 211 U.S. 210, 29 S.Ct. 67, 53 L.Ed. 150, reviewing the Constitution of the state of Virginia in this regard, and that of Oklahoma Cotton Ginners' Ass'n v. State, 174 Okl. 243, 51 P.(2d) 327, wherein is set out the constitutional provisions of the state of Oklahoma as to rates and service of transportation companies made reviewable by the courts, and attention directed to a lack of such provisions as to cotton gins, and therefore irrevisable as to such rates.

As we have no such constitutional provision in this state, such exceptions are without interest here, save as adding emphasis to the general rule above stated.

■ The Legislature may fix the rates or it may empower an agency, such as the Public Service Commission, to act in its stead in this regard. In either event, the courts are open for one who complains that by the exercise of the rate-making power he has been deprived of property without due process of law or that his private property has been taken for public use without just compensation. The courts act, therefore, for the purpose of holding the exercise of this legislative power within constitutional limits (Const.1901, §§ 13, 23), but not for the purpose of making rates or substituting their judgment for that of the legislative agencies.

An enlightening discussion of judicial review in such matters is to be found in the following excerpt from St. Joseph Stock Yards Co. v. United States, 298 U.S. 38, 56 S.Ct. 720, 725, 80 L.Ed. 1033:

"The fixing of rates is a legislative act. In determining the scope of judicial review of that act, there is a distinction between action within the sphere of legislative authority and action which transcends the limits of legislative power. Exercising its rate-making authority, the Legislature has a broad discretion. It may exercise that authority directly, or through the agency it creates or appoints to act for that purpose in accordance with appropriate standards. The court does not sit as a board

of revision to substitute its judgment for that of the Legislature or its agents as to matters within the province of either. * * * When the Legislature itself acts within the broad field of legislative discretion, its determinations are conclusive. When the Legislature appoints an agent to act within that sphere of legislative authority, it may endow the agent with power to make findings of fact which are conclusive, provided the requirements of due process which are specially applicable to such an agency are met, as in according a fair hearing and acting upon evidence and not arbitrarily. * * * In such cases the judicial inquiry into the facts goes no further than to ascertain whether there is evidence to support the findings and the question of the weight of the evidence in determining issues of fact lies with the legislative agency acting within its statutory authority.

"But the Constitution fixes limits to the rate-making power by prohibiting the deprivation of property without due process of law or the taking of private property for public use without just compensation. When the Legislature acts directly, its action is subject to judicial scrutiny and determination in order to prevent the transgression of those limits of power. The Legislature cannot preclude that scrutiny and determination by any declaration or legislative finding. Legislative declaration or finding is necessarily subject to independent judicial review upon the facts and the law by courts of competent jurisdiction to the end that the Constitution as the supreme law of the land may be maintained. Nor can the Legislature escape the constitutional limitation by authorizing its agents to make findings that the agent has kept within that limitation. Legislative agencies, with varying qualifications, work in a field peculiarly exposed to political demands. Some may be expert and impartial, others subservient. It is not difficult for them to observe the requirements of law in giving a hearing and receiving evidence. But to say that their findings of fact may be made conclusive where constitutional rights of liberty and property are involved, although the evidence clearly establishes that the findings are wrong and constitutional rights have been invaded, is to place those rights at the mercy of administrative officials and seriously to impair the security inherent in our judicial safeguards. That prospect, with our multiplication of administrative agencies, is not one to be lightly regarded.

It is said that we can retain judicial authority to examine the weight of evidence when the question concerns the right of personal liberty. But, if this be so, it is not because we are privileged to perform our judicial duty in that case and for reasons of convenience to disregard it in others. The principle applies when rights either of person or of property are protected by constitutional restrictions. Under our system there is no warrant for the view that the judicial power of a competent court can be circumscribed by any legislative arrangement designed to give effect to administrative action going beyond the limits of constitutional authority. This is the purport of the decisions above cited with respect to the exercise of an independent judicial judgment upon the facts where confiscation is alleged."

In the instant case, the Legislature did not act directly and itself fix the rates, but left the matter for determination by its appointed agency, the Public Service Commission, endowed with power to make findings of fact which are conclusive so long as requirements of due process applicable to such agency are met, such as according a hearing and acting upon evidence, and not arbitrarily.

There can be no insistence here that the Public Service Commission acted without evidence and arbitrarily without a hearing. The order entered, the recitals of which are in no manner questioned, demonstrates to the contrary, and discloses that testimony in detail was offered by the respective parties, including investigations by engineers of the commission, by the parties themselves, inspection of books—all of which continued from April 16, 1935, to October 5, 1935. And thereafter written briefs of the parties were submitted from time to time, the final date being December 28, 1935. The record of testimony and exhibits are voluminous, consisting of thousands of pages of testimony and hundreds of exhibits as the order recites; and upon consideration of all the evidence the commission issued the final order on April 2, 1936.

So the contention here is, not that the commission acted arbitrarily and without evidence or a hearing, but that it acted wrongfully, and in disregard of much credible evidence, and, in short, reached an erroneous conclusion, contrary to the great preponderance of the proof.

The insistence is that the circuit court on appeal should review the finding

or conclusion of the commission, and, if convinced it was erroneous, should set it aside and substitute therefor its own conclusion, and remand the cause to the commission, with instructions to promulgate a schedule of rates in conformity with such corrected finding. But this would be invasive of the legislative field and beyond the proper function of the court. The resort to the courts is to confine the legislative power within constitutional bounds, and, if there is no occasion for the exercise of that character of review, then the courts have no duties to perform. It may be repeated that rate making is a legislative and not a judicial function.

 Recognizing this principle, counsel for the city insists that a rate that is too high confiscates the subscriber's property, and interferes with his liberty, and that of consequence a constitutional question is as much presented on the part of the subscriber as on the part of the utility when the rate is too low. The argument is ingenious, but not sufficiently persuasive. If such a theory be accepted, then all rate-making legislation is reviewable and revisable by the courts, for to determine the matter as to the subscriber a full consideration of all the facts and circumstances in every instance would be necessary. A rate fixed by the Legislature would be as much the subject of attack by the subscriber as one fixed by the commission. Ours is a representative form of government, and the Legislature represents the people of the state who are subscribers to telephone service.

It would follow, as a logical result of the theory advanced by the city, that a subscriber who has no invested capital at stake, but only a desire for a lower rate, and dissatisfied with the schedule fixed in the law passed by his representatives in the Legislature, could appeal to the courts to have the law nullified, and a new schedule of rates established by the judicial branch of our government, and thus have the court's judgment in a purely legislative matter substituted for that of the lawmaking body. Manifestly, such a result would run counter to our present form of government, and in contravention of section 43 of our Constitution prohibiting the judiciary from an invasion of the legislative domain.

The fact that in the instant case the schedule is fixed, not by the Legislature directly but by its agency, the Public Service Commission, works no change in the principle.

Nor do we find in the cited authorities support for such a theory, but rather the contrary. Counsel for the city lays some stress upon Michel et al. v. Illinois Bell Telephone Co., 226 Ill.App. 50. But the gist of that case, so far as this question is concerned, may well be stated in the following excerpt from the opinion: "This is not a case in which the court was called upon to fix a rate, or to determine what was a reasonable rate. The only purpose of the bill was to restrain, by injunction, an alleged unauthorized rate from being put into force and effect." It is readily apparent, therefore, this authority is here inapplicable.

 Of course there are many legal rights the subscriber may enforce in the courts. He must not be injustly discriminated against, and he may even challenge an order of the commission made in excess of its powers or void for other reasons, and he may, as in the Michel Case, supra, enjoin the utility from demanding an unauthorized rate. But as to the matter of fixing a schedule of rates he must look to his representatives, the lawmaking body or its agency, the commission as in this case.

In Goldfield Consolidated Water Co. v. Public Service Commission (D.C.) 236 F. 979, also cited, the jurisdiction of the court was invoked by the utility on the ground that the rates were confiscatory. Manifestly, this case adds no support to the insistence here urged.

In State Public Utilities Commission ex rel. v. Springfield Gas & Elec. Co., 291 Ill. 209, 125 N.E. 891, it is expressly recognized that rate making is a legislative function. Upon the question here being considered, enough of the applicable law of that state is not set out for a comprehensive view of the opinion, and we find no statement in the opinion which would support such a theory as here insisted upon. Of course, as stated therein, a rate should be fair, both to the public and to the utility. This of course is recognized by all. But as to the schedule of rates from the subscriber's standpoint he looks to his own agency, the commission, or to his own representative, the Legislature, to establish a rate fair and reasonable to the public. Where the question has been directly involved, the courts have unhesitatingly repudiated such a theory.

The case of Nebraska Telephone Co. v. State ex rel. Yeiser, 55 Neb. 627, 76 N.W.

171, 174, 45 L.R.A. 113, involved a complaint of a subscriber for telephone service which he insisted was too high. The generally accepted rule that rate fixing was a legislative and not a judicial function was reiterated and the opinion concludes: "The relator must address himself for relief from the grievances of which he complains to the legislative power of the state."

Counsel argue that, although the subscriber is under no legal duty to take the service, yet he is under an economic necessity therefor, which should serve the same purpose. Answering a like argument, the New York court in Brooklyn Union Gas Co. v. City of New York, 50 Misc. 450, 100 N.Y.S. 570, 577, said: "His personal liberty has not been invaded, because he is under no obligation to purchase the gas. It is true * * * the pressure of circumstances might operate almost as strongly as a legal obligation to compel it to purchase gas. But still the obligation to purchase gas is not a legal one. There is no absolute duty upon the consumer to take. * * * Private rights may be interfered with so long as they are not vested. * * * A right is not vested unless it is something more than such a mere expectation as may be based upon an anticipated continuation of the present general laws."

And, to like effect, is United States Light & Heat Corp. v. Niagara Falls G. & E. L. Co. (C.C.A.) 47 F.(2d) 567, 570, where the court, speaking to this question, said: "But a citizen has no vested rights in statutory privileges or exemption. * * * This gas company became bound to furnish gas within the city of Niagara Falls by reason of the Public Service Law. The consumer was not obliged to purchase gas; he was privileged to do so. A private right may be interfered with so long as it is not vested." Pinney & Boyle Co. v. Los Angeles Gas & Electric Corp., 168 Cal. 12, 141 P. 620, L.R.A.1915C, 282, Ann.Cas.1915D, 471, and Brooklyn Union Gas Co. v. New York, 188 N.Y. 334, 81 N.E. 141, 15 L.R.A.(N.S.) 763, 117 Am.St.Rep. 868, are to the same general effect.

Counsel cite section 103 of our Constitution. But we can find no support for this theory in that provision, which was but a mandate to the Legislature, which has been obeyed by the passage of appropriate laws upon the subject matter thereof.

But we forego further discussion, and are persuaded that upon both reason and authority the theory advanced by the city is to be rejected.

It is apparent that the purpose of the appeal is to have the court substitute its judgment in a legislative matter for that of the commission. This the court had no jurisdiction to do. A consideration of the appeal could result, therefore, in no practical benefit, and was of consequence properly dismissed. Authorities supra.

Much argument is made against the allowance by the court of the intervention on the part of the Public Service Commission, and its specially employed counsel, and it is insisted the commission was without interest in the subject matter. The commission has exclusive jurisdiction over the matter of these rates (section 9631, Code), and is charged with the duty of enforcing its orders (section 9632, Code). Whether it has such an interest as, strictly speaking, would authorize an intervention, is not material here to determine. Mere terms are of no great importance. It was a matter affecting public interest. The commission was an agency of the Legislature charged with important duties, and, we are persuaded, acted within its legal rights in calling to the attention of the court its lack of jurisdiction over the subject matter. Perhaps, more accurately speaking, it may be said the commission was permitted to be heard amicus curiæ, as was the ruling by the Louisiana court in State ex rel. Crozier v. Rast, Judge, 49 La.Ann. 1451, 22 So. 421, wherein the agricultural board was permitted by counsel to so appear, as the matter was one of public interest, though formal intervention was held inappropriate. This finds ample support in 2 Corpus Juris 1323, 1324, and the authorities therein cited. We can see no sound objection to this course, and approve the same.

It is also insisted the commission had no authority to so appear by counsel. As the commission presented the matter of jurisdiction of the court, both by personal signatures and by counsel, it may be that it is unnecessary to answer this insistence. But we think it appropriate to say that, in our opinion, such employment was authorized by section 9617, Code 1923, which gives the commission such authority upon consultation and approval of the Governor. The commission was interested in the enforcement of its orders, and charged with the duty to so enforce them. The mere fact that the city was dissatisfied, and insisted the rates should be still further re-

duced, did not tie the hands of the commission, and require it to sit silently by while the order that it had made was under attack. It had the right to appear amicus curiæ, and we think it likewise had the authority under said section 9617 to employ counsel with the Governor's approval.

It may be true that, in view of sections 9672, 871, and 872, Code 1923, the Attorney General, if he saw fit to represent the commission, would have authority over counsel so employed. But here the Attorney General declined to act for the commission and joins the city in its attack upon the order from which the appeal is prosecuted. The commission, therefore, resorted to section 9617, Code, that it might have the matter properly presented. That statute was evidently enacted to meet some contingency that may not at the moment be foreseen. In the opinion of the commission and the Governor, that contingency arose in the instant case, and we see no reason against giving the statute application here.

Nor was there occasion for remandment of the cause to the commission for finding of facts. In some of the cases cited the statutes so direct. We have no such statute in this state. We think it clear enough the commission in the opinion and order entered fully complied with our laws. Alabama Water Co. v. City of Attalla, 211 Ala. 301, 100 So. 490; section 9652, Code 1923.

Finding no error in the record, the judgment will stand affirmed.

Affirmed.

ANDERSON, C. J., and BOULDIN and KNIGHT, JJ., concur.