24 So.2d 409

## M. W. SMITH LBR. CO. v. ALABAMA PUBLIC SERVICE COMMISSION et al.

### SMITH et al. v. SAME.

3 Div. 438, 439.

Supreme Court of Alabama.

Jan. 17, 1946.

Adams & Gillmore, of Grove Hill, and C. Eugene Fowler, of Birmingham, for appellant.

Wm. N. McQueen, Atty. Gen., for appellee Alabama Public Service Commission.

Martin, Turner & McWhorter, of Birmingham, and Richard T. Rives, of Montgomery, for appellee Alabama Power Co.

Lawrence K. Andrews, of Union Springs, for appellee Alabama League of Municipalities.

GARDNER, Chief Justice.

The Alabama Public Service Commission, on December 29, 1944, found that the gross revenues of the Alabama Power

Company for 1944 were excessive by approximately $600,000, and that a reduction therein should be effected by refunding the December, 1944 bill of every customer in its residential and street lighting classifications. The order recites that this finding was the result of a hearing by the Commission on March 12, 1943, and a continuous investigation thereafter by the Commission of the rates of the Alabama Power Company, and of various conferences from time to time with the representatives of the company. The order contains the further recital as to the different reductions effected during this period and the elimination of certain differentials which the Commission considered unjustified, the details of which need not be here stated. It contains the following further important recitals:

"Continuing its investigation of the rates and charges of respondent, it now appears to the Commission from the present available estimate of the earnings of respondent for the year 1944, including particularly the Federal Income and Excess Profits Taxes, that a further reduction in the gross revenues for 1944 may be made.

"In view of present unsettled business conditions generally, the Commission is of the opinion that such further reduction should be effected by a consumer credit or refund hereinafter provided.

"In the determination of which classes of consumers to whom the credit or refund should be given, the Commission has given consideration to the fact that the major reductions in respondent's retail rates heretofore effected under this Order of Investigation have been applicable to service other than residential electric and municipal street lighting. With respect to industrial service, this is currently being generally rendered at the lowest average cost per KWH to the consumer in the Company's history.

"The Commission is therefore of the opinion that the credit or refund to be made should apply to the electric residential and municipal street lighting consumers of respondent and should be equivalent to 100% of the December, 1944 bills of all such consumers. It is further the opinion of the Commission that the credit applied to each residential and street lighting consumer's account for December, 1944 bill shall not embrace a service period of more than thirty-one (31) days. It is estimated that this order will effect a savings of approximately $580,000.00 to respondent's

residental electric consumers and approximately $20,000.00 to its municipal street lighting consumers."

Up to the time of making the order of December 29, 1944, there were no parties to the proceedings before the Alabama Public Service Commission except the Commission itself and the Alabama Power Company, the latter consenting thereto. But on January 15, 1945, the M. W. Smith Lumber Company, a partnership, filed with the Commission their petition for leave to intervene in said matter, protesting the entry of such order and charging its invalidity upon various grounds. The petition contained an alternative prayer that if intervention be disallowed the petition be received as an independent complaint filed pursuant to Sec. 57, Title 48, Code 1940, to the effect that compliance by the Power Company with the order would "be unjust, unreasonable, and discriminatory, and will impair the ability of the Power Company to render service and will distort its operating statistics and violate lawful accounting regulations by improper surrender of revenue accrued or paid for past services rendered."

The Power Company objected to the allowance of the petition for intervention and moved to strike it upon various grounds. The Alabama League of Municipalities also appeared and moved to dismiss the petition upon the same line of reasoning as presented in the motion of the Alabama Power Company. The Commission set the petition for leave to intervene down for hearing on February 14, 1945, at which time attorneys for petitioners M. W. Smith Lumber Company, the Alabama Power Company, and the Alabama League of Municipalities appeared and presented arguments to sustain their various contentions.

The Commission entertained the view that the petition failed to allege such facts as to show that the petitioners have any direct financial interest, and stated to counsel that a period of ten days would be given in which to amend the petition in that respect. No such amendment was filed. Thereupon the Commission sustained the motion and objections, and denied the petition to intervene. An appeal was then prosecuted to the Circuit Court of Montgomery County, where the holding was that the appellants had no interest in the order from which the appeal was attempted to be taken and that the appeal

be dismissed. It is from this order that the appeal is prosecuted to this Court.

Counsel for appellants also presented to the Circuit Court of Montgomery County a petition for writ of certiorari to review the order of the Commission of December 29, 1944, which appears merely to have been another method of attack on such order. Objections were duly interposed by demurrer and otherwise to this petition, which were sustained and the petition for certiorari dismissed. An appeal is likewise prosecuted from this ruling of the court, and the two records are here consolidated and considered as controlled by the same principles.

■ The denial of relief to petitioners before the Commission was rested upon the theory that as commercial users of electric power they were unaffected by the order of December 29, 1944, and therefore were not entitled to intervene or otherwise question said order. As to the question of intervention, Sec. 65, Title 48, Code 1940, provides as follows: "Every person, firm, corporation, co-partnership, association, or organization affected thereby may by petition intervene and become a party to any proceeding before the commission."

. The words in the above-cited statute "affected thereby" are pertinent to the question here under consideration. This statute is but the expression of the general rule as expressed in numerous decisions. Illustrative, is the following from Poyner v. Whiddon, 234 Ala. 168, 174 So. 507, 510: "To entitle a party to invoke the court's jurisdiction to review the action of a subordinate court or body, by the writ of certiorari, he must show that he is a party to the proceeding or 'that he has a personal interest in the subject-matter, and not a mere public interest, in common with the general public.'"

Speaking to a like principle, this Court in City of Birmingham v. Southern Bell Tel. & Tel. Co., 234 Ala. 526, 176 So. 301, 303, observed: "It may be stated as a well settled general rule that the existence of an actual controversy is an essential requisite to appellate jurisdiction. * * * Since an actual controversy is necessary, it is not within the province of appellate courts to decide abstract, hypothetical, or moot questions, disconnected from the granting of actual relief or from the determination of which no practical relief can follow.

* * * Ordinarily an appellate court will not entertain appeal from the results of its action when its decision will not affect any substantial right of a party in the pending matter."

Turning to the Federal decisions, we find like thought expressed in Edward Hines Trustees v. United States, 263 U.S. 143, 44 S.Ct. 72, 68 L.Ed. 216. That portion of the opinion here applicable is found summarized in headnotes 1 and 2 as follows:

"1. To maintain a suit to set aside an order of the Interstate Commerce Commission upon the ground that it exceeded the powers of the Commission, it is not essential that a plaintiff should have been a party to the proceedings before the Commission in which the order was made.

"2. But to maintain such a suit the plaintiff must show that the order alleged to be void subjects him to actual or threatened legal injury."

The opinion in that authority also points out that for any mere matter of discrimination redress should be sought by proceeding before the Commission, and that in any event "plaintiffs' right is limited to protection against unjust discrimination."

■ Of course, the Commission has the right of classification in making its orders and prescribing rates and rules and regulations. Sec. 36, Title 48, Code 1940. It has rather broad powers, not only by virtue of the statute but by virtue of its inherent duties. Its orders are taken as prima facie just and reasonable, as expressly provided under Sec. 82, Title 48, Code 1940, and as emphasized in the recent case of Alabama Public Service Com. v. Crow, Ala., 22 So. 2d 721.[1] See also United States v. Detroit & Cleveland Navigation Co., 66 S.Ct. 75.

And in Norfolk & Western Railway Co. v. Conley, 236 U.S. 605, 35 S.Ct. 437, 59 L.Ed. 745, the Court observed: "The state has a broad field for the exercise of its discretion in prescribing reasonable rates, * * * it is not necessary that there should be uniform rates or the same percentage of profit on every sort of business; and that there is abundant room for reasonable classification and the adaptation of rates to various groups of services."

An interesting discussion upon the question of discrimination as between different classes of customers of public utilities is to be found in the case of Alpha Portland

---

[1] Ante, p. 120.

Cem. Co. v. Public Serv. Comm., 84 Pa. Super. 255. It was there pointed out the statute made no requirement that rates for different classes of service be either uniform or equal, or even equally profitable to the utility. The opinion proceeds: "The requirement is merely that rates for one class of service shall not be unreasonably prejudicial and disadvantageous to a patron in any other class of service. Before a rate can be declared unduly preferential and therefore unlawful, it is essential that there be not only an advantage to one, but a resulting injury to another. * * * There must be advantage to one at the expense of another. * * * The commission having found on competent and substantial evidence (and that finding is not questioned here) that the rates charged to the appellants have not been more than is reasonable to them, that they have been given the same rate as has been charged to others in their class, and that they have suffered no prejudice or disadvantage on account of the relatively lower rates charged to other classes of patrons, we cannot say that there was any undue or unreasonable prejudice or discrimination against them."

▇ Turning to the order of December 29, 1944, we find the express recital that consideration was given to the fact, in making the refund to residential customers and municipalities, that the larger reductions in the Power Company's retail rates heretofore effected under the order of investigation (beginning in March, 1943) have been applicable to service other than residential electric and municipal street lighting. And the order of the Commission further recites that with respect to industrial service this is currently being generally rendered at the lowest average cost per kilowatt hour to the consumers in the Company's history. These recitals, therefore, clearly demonstrate that in making the order of December 29th the Commission considered all classifications and reached the definite conclusion that it would be equitable and just to make the refund apply to the residential and municipal street lighting consumers.

In the hearing before the Commission counsel for petitioners was repeatedly asked to disclose how their interest was affected. Counsel finally stated that he had no intention of offering any testimony tending to show that the treasury of the Power Company could not stand this re-fund, and added what appears to be a rather significant statement: "It's the principle involved." Finally, in answer to the following inquiry "How could your client be affected if the Commission were to hold this order invalid?" counsel answered: "He would have to give back $27 he actually got," referring, of course, to the amounts his clients received as residential consumers rather than as commercial consumers.

There was no effort to show either by proof or averment of facts in the petition that the service which petitioners received as commercial consumers of electricity would be in any manner affected. As we gather from the order of the Commission and from the argument presented, the amount of $600,000 was shown to come within the influence of the Federal income and excess profits tax, an amount accumulated perhaps due largely to war emergency conditions. And it appears that the Secretary of the U. S. Treasury issued a public statement to the effect that the Federal Treasury offered no objection to any order of the state regulatory bodies of any rate reduction because of the fact that it might result in the collection of less excess profit taxes by the Federal Government.

But whatever may be the attitude of the Treasury Department, it is clear enough these petitioners do not seek to speak for the Federal Government in the matter of collection of excess profits taxes. At the time that the petitioners sought to intervene before the Commission, the order of December 29th had been substantially executed and the refunds made. Should petitioners succeed and have the order annulled, the insistence is that the Power Company must proceed to collect from 194,000 residential consumers and the municipalities involved the amount of this re-fund, which doubtless would ultimately result, if and when collected, in being to a large extent absorbed by the excess profits tax. Petitioners would get no better service. They would receive no lower rate. Their legal rights would in no manner be affected. The benefit to the residential consumers works no injury to these petitioners. After all is said, counsel correctly stated the real contention when he replied before the Commission: "It's the principle involved."

▇ But as we have previously observed, an actual controversy is necessary, and it is not within the province of ap-

pellate courts to decide abstract, hypothetical, or moot questions, disconnected from the granting of actual relief or from the determination of which no practical relief can follow. The decision must affect some substantial right of the party in the pending matter. Though given ample opportunity to do so, petitioners have failed to show that any substantial right will be affected by the order. Their right to intervene, as well as their right to make complaint under the statute, was properly denied and the decree so holding is due to be affirmed.

Other grounds for affirmance are argued in brief, but need no discussion here.

In anwer to argument of counsel for petitioners that the order here complained of was unprecedented, opposing counsel have submitted in their brief a reply of the Solicitor General for the National Association of Railroad and Utilities Commissioners to an inquiry propounded by the Public Service Commission, in which it appears that a number of states, among them Oklahoma, Kentucky, Pennsylvania, Connecticut, Michigan, New Hampshire, Georgia, and New Jersey, have entered similar orders during the years 1943, 1944, and 1945, some of which appear to have been entered for the express purpose of reducing the excess profits tax liability.

But we see no occasion to enter into a discussion or consideration of the validity of such an order, for the simple reason that at the threshold of the case the petitioner's right to question the order is successfully challenged.

What has been said suffices, also, to show that the writ of certiorari was properly denied. Certainly, if petitioners are without interest to intervene, the court would not grant a writ of certiorari, which is not regarded as a writ of right but rather as one which is discretionary with the court in order to promote the ends of justice as effectively as possible. Ex parte Wetzel, 243 Ala. 130, 8 So.2d 824.

It results, therefore, that as the causes are here consolidated, the two decrees here presented for review will be affirmed. It is so ordered.

Affirmed as to both appeals.

FOSTER, LIVINGSTON, LAWSON, SIMPSON, and STAKELY, JJ., concur.

BROWN, J., concurs only in the conclusion.

BROWN, Justice (concurring specially).

I concur in the conclusion announced by the majority, that appellants have not shown such interest in the matters in controversy as gives them the right to intervene and question the regularity or validity of the public service commission order; and, hence, the judgment of the circuit court denying such intervention and refusing to grant certiorari should be affirmed.

I am not, however, of opinion that the granting of rebates and the forgiving of indebtedness incurred for current furnished by a utility is within the rate-making power and the power of classification of the public service commission. Such forgiveness or rebate can only be made by and through the consent of the utility. To force a utility to grant such rebate would be taking private property without due process of law. The indebtedness earned by furnishing current to domestic and other users is income and property; and the granting of such rebate is, in my opinion, prohibited by statute. If, as contended by the appellants, the order is a prohibited rebate, contrary to public policy and the statute affecting the general public, the matter is one for the state acting through its attorney general. State ex rel. Carmichael, Atty. Gen., v. Bibb et al., 234 Ala. 46, 173 So. 74.