356 So.2d 612 (1978)
GENERAL TELEPHONE COMPANY OF the SOUTHEAST, a corp.
v.
ALABAMA PUBLIC SERVICE COMMISSION et al.
SC 2761.
Supreme Court of Alabama.
February 17, 1978.
Rehearing Denied April 7, 1978.
Robert C. Black of Hill, Hill, Carter, Franco, Cole & Black, Montgomery, and William C. Fleming, Durham, N. C., for General Tel. Co. of the Southeast.
Oliver W. Brantley, Troy and Maurice F. Bishop, Birmingham, for appellees.
PER CURIAM.
This case seeks review of an award of attorneys' fees from a supersedeas bond created in a utility rate case involving the Appellant, General Telephone Company of the Southeast. We reverse and render.
*613 On September 13, 1973, GTSE filed an application with the Alabama Public Service Commission seeking an increase in its rates and charges. Maurice Bishop and Oliver Brantley, attorneys at law, intervened in this cause on behalf of their clients, the Governor of Alabama and the State of Alabama, and some fourteen municipalities, respectively.
The rate increase was refused by the Public Service Commission and GTSE appealed to the Montgomery County Circuit Court. Pursuant to Tit. 48, § 81, Code,[1] the utility superseded the Commission's order, by creating a supersedeas bond, and collected charges at the proposed increase rate. The Circuit Court affirmed the Commission and, pursuant to Tit. 48, § 90, Code,[2] an appeal was filed in this Court. We remanded the case for further determination as to the utility's return on equity under the proposed rate. See Gen. Tel. Co. of the S. E. v. Alabama Publ. Serv. Com'n., 335 So.2d 151 (Ala.1976). Subsequently, the Commission issued an order setting rates which produced the desired return on equity. This Court affirmed that order in Gen. Tel. Co. of the S. E. v. Alabama Publ. Serv. Com'n., 340 So.2d 1118 (Ala.1976).
Shortly thereafter, Bishop and Brantley filed in the Circuit Court a Petition for Determination and Allowance of Reasonable Attorneys' Fees. These fees were sought from the supersedeas bond created by the utility when it appealed the original Commission order.
Petitioners contend that their services created a common fund from which attorneys' fees are permitted within the discretion of the trial Court. In support of this contention, they cite Tit. 46, § 63, Code.[3] This section provides, inter alia:
In all suits and proceedings in the probate courts and circuit courts and other courts of like jurisdiction, where there is involved the administration of a trust . . . or where there is a partition in kind of real or personal property between tenants in common, the court having jurisdiction of such suit or proceeding may ascertain a reasonable attorney's fee, to be paid to the attorneys or solicitors representing the trust . . . or common property . . . which is to be paid when collected as the other costs in the proceeding to such attorneys or solicitors as may be directed or ordered by the court . . ..
It is clear that Petitioners' assertions must fail for two reasons. First, the statute does not cover the situation before us. It is not the administration of this fund for which Petitioners seek compensation. Furthermore, the fund is not "common" in the sense alluded to in the statute; instead, it is in the nature of a judgment with a specific, ascertainable portion being payable to each subscriber.
The intent of the Legislature in passing this statute clearly does not encompass the situation at bar. The legislative history of this section shows its remedial nature in that it was passed to rectify the situation whereby certain trusts were created at one's own expense so that others could share therein. (The best example of such trusts arises with regard to estate matters.) See Penney v. Pritchard & McCall, 255 Ala. 13, 49 So.2d 782 (1950). No case cited to this Court is persuasive that this statute should be applied here, however; and this for the reason that each is distinguishable in that, in each, the trial Court exercised unbridled equity powers. For the reasons enunciated below, this is not possible in the instant action.
This brings us to the second major reason why attorney's fees are not recoverable in cases such as this. It is well settled that the Circuit Court's jurisdiction in such causes is strictly statutory and, thus, severely limited. Ex parte Alabama Public Service Commission, 268 Ala. 322, 106 So.2d 158 (1958); and 73 C.J.S. Public Administrative Bodies §§ 7, 8. In Birmingham Electric Co. v. Alabama Public Service *614 Commission, 254 Ala. 119, 47 So.2d 449 (1950), we held:
"It is familiar law that when special statutory authority in derogation of the common law is conferred on courts of general jurisdiction, such a court of general jurisdiction becomes quoad hoc a court of inferior or limited jurisdiction. State v. Mobile & G. R. Co., 108 Ala. 29, 18 So. 801; Goodwater Warehouse Co. v. Street, 137 Ala. 621, 34 So. 903; Gunn v. Howell, 27 Ala. 663, 62 Am.Dec. 785; Martin v. Martin, 173 Ala. 106, 55 So. 632; Ex parte Pearson, 241 Ala. 467, 3 So.2d 5; Truett v. Woodham, 98 Ala. 604, 13 So. 519." 254 Ala. at 125, 47 So.2d at 452.
Consequently, because these sections are in derogation of the common law, and there is no present statutory authority for the award of attorney's fees from the fund, the Circuit Court is without jurisdiction to make such an award.[4]
Moreover, it is the presumed intent of the Legislature that such an award not be granted. Tit. 48, § 93, Code,[5] specifically authorizes certain persons ("who shall sustain any loss, injury, or damage by reason of the suspension of the rate or orders. . . .") to sue on the bond. The recovery of attorney's fees, however, is not mentioned. Therefore, it must be presumed that such recovery was not intended and, accordingly, should not be permitted. See Adams v. Mathis, 350 So.2d 381 (Ala.1977).
The obvious conclusion, then, is that such fees are not recoverable in an action of this type. Thus, the judgment of the trial Court is due to be reversed, the petition is dismissed, and this cause is rendered.
REVERSED AND RENDERED.
TORBERT, C. J., and BLOODWORTH, MADDOX, ALMON, SHORES, EMBRY and BEATTY, JJ., concur.
FAULKNER and JONES, JJ., concur specially.
JONES, Justice (concurring specially).
I concur in the holding of the Per Curiam opinion which denies attorneys' fees to these Petitioners. I believe, however, that before dealing with the merits of this appeal, this Court, upon its own motion, should initially analyze the posture of this case. The anomaly created by the curious posture of this proceeding is dramatized by the Petitioners' motion to dismiss this appeal. Petitioners contend that, because the Appellant (GTSE) "can take no manner of benefit from a reversal or modification of the decree", it has no standing to raise this appeal. Because their fees, say the Petitioners, are ordered to be paid from the fund secured by the supersedeas bond (all of which in any event is included in the order of refund), the outcome of the appeal is immaterial to Appellant.
At first blush, this argument would appear to have merit. On more thorough analysis, however, I would hold that a consideration of the motion to dismiss is itself premature. In order to proffer the motion to dismiss, Petitioners assume that each of them has standing as a proper party to this action and that all necessary parties are properly before the Court. As will be shown, because of the absence of necessary parties, if the Petitioners' motion to dismiss were granted, the proceeding would then be rendered totally ex parte. In other words, it is the position of Petitioners that they are entitled to an award of attorneys' fees and expenses in the sum of $75,000 (to be paid "off the top" of the fund secured by the supersedeas bond), granted in a proceeding in which they, as Petitioners, were the only proper and necessary parties before the Court. That insurmountable due process problems are raised by the case as presently postured seems undebatable; and, thus, in *615 my opinion, the motion to dismiss is rendered moot.
Title 48, § 65, Code,[1] provides:
Every person, firm, corporation, copartnership, association, or organization affected thereby may by petition intervene and become a party to any proceeding before the commission. (Emphasis added.)
From this naked assertion, it would appear that both Bishop and Brantley are proper parties before us. In my considered opinion, however, such is not the case.
As stated, Maurice Bishop represented both the Governor and the State of Alabama. The interest of these parties in this litigation is somewhat nebulous. The Governor is neither a subscriber nor a competitor of GTSE. He can derive no direct personal or financial benefit from this suit. Similarly, the State has no direct interest which it is seeking to protect. Therefore, as shown by their Petitions for Intervention, both parties intervened merely to protect the interests of the consuming public i. e., GTSE's subscribers.
Though commendable, I would hold that such intervention is not proper. The words "affected thereby" in § 65, emphasized above, refer to some "`personal interest in the subject-matter, and not a mere public interest, in common with the general public.'" See M. W. Smith Lumber Co. v. Alabama Public Service Commission, 247 Ala. 318, 321, 24 So.2d 409 (1946). See also Edward Hines Yellow Pine Trustees v. United States, 263 U.S. 143, 44 S.Ct. 72, 68 L.Ed. 216 (1923) (which refused to allow intervention before the Interstate Commerce Commission unless some legal injury was threatened or incurred); and 73 C.J.S. Public Administrative Bodies and Procedure, § 119. The reason for the rule in cases such as this is manifest in that "the interests of the public [are] represented by the commission." Ex parte City of Birmingham, 199 Ala. 9, 16, 74 So. 51 (1917); and 73 C.J.S. Public Utilities § 50. The only other cases which have considered this statute reflect similar requirements. See Mobile County Gas District v. Mobile Gas Service Corp., 284 Ala. 664, 227 So.2d 565 (1969); Alabama Power Co. v. Alabama Public Service Commission, 278 Ala. 597, 179 So.2d 725 (1965); and Tit. 48, § 65, Code.
Mobile County Gas and Alabama Power held that § 65 was a mere enactment of common law intervention by interested parties. Therefore, the same requirements as at common law must be met before intervention is possible. The Court in Alabama Power permitted intervention only after a preliminary showing of some direct personal or financial interest. This case was cited with approval in Mobile County Gas and reflects the Court's application of similar general requirements. See Tit. 7, § 247, Code;[2] and Pruett v. Ralston Purina Co., 273 Ala. 594, 143 So.2d 309 (1962).
It is apparent that the general rule, as presently declared in Rule 24, Intervention, ARCP, must be applied. When this is done, even with the relaxed requirements noted in the Committee Comments, it appears that neither the Governor nor the State of Alabama may intervene in this cause. The case cited in the Comments as authority for the present permissive intervention policy (Cascade Natural Gas Corp. v. El Paso Natural Gas Co., 386 U.S. 129, 87 S.Ct. 932, 17 L.Ed.2d 814 (1967)) still required the presence of some special interest in the proceedings before the State of California was permitted to intervene. No such special interest may be discerned in the case at bar.
Under the view thus expressed, Bishop would be foreclosed from any recovery.[3] By representing a party not properly before the Court, he can partake of no benefit thus derived. This is not to say that Maurice Bishop, one of Alabama's outstanding lawyers, did not have the right to appear on *616 behalf of the Governor and the State of Alabama as amicus curiae. Indeed, the professionalism of his advocacy, and his legal expertise in the public utility field, both at the trial as well as the appellate stages of the case, served as an invaluable assist in the resolution of this complex litigation. But the standing of an amicus, with its attendant duties and rights, is far different from that of a party litigant and does not include any interest or claim upon the funds from which the attorneys' fees are sought.
The other party before the Court, Brantley, represented fourteen communities, each of which had some immediate interest in the proceeding. Therefore, they were proper intervening parties. In this action, however, Brantley is not seeking compensation from his clients or from a percentage of the refund due them. Instead, he seeks his fees from the total fund created to supersede the rate ordered by the Commission and, thus, his clients would only share proportionately in his total fee.[4]
Even though Brantley's clients were proper intervenors, the procedure utilized in this subsequent proceeding, to determine and obtain his fees, is, in my opinion, constitutionally inadequate. Initially, it must be recognized that constitutional safeguards and due process of law apply in administrative proceedings. Voigt v. Webb, 47 F.Supp. 743 (E.D.Wash.1942); State, ex rel. Steele v. Board of Education of Fairfield, 252 Ala. 254, 40 So.2d 689 (1949); 16A, C.J.S. Constitutional Law § 628; and 73 C.J.S. Public Administrative Bodies § 60. These standards are somewhat lessened, however, because all that is necessitated are the "rudimentary requirements of fair play." Morgan v. United States, 304 U.S. 1, 15, 58 S.Ct. 999, 82 L.Ed. 1129 (1938); and 73 C.J.S. Public Administrative Bodies §§ 60, 130.
It has long been recognized that adequate notice is a constitutional requirement of procedural due process. See Covey v. Town of Somers, 351 U.S. 141, 76 S.Ct. 724, 100 L.Ed. 1021 (1956); Bolte v. Schmale, 258 Ala. 373, 62 So.2d 797 (1952); and 16A, C.J.S. Constitutional Law § 619. When this requirement is applied to administrative hearings, however, a certain dichotomy arises because it is not every administrative act which requires due process. The necessity of notice in an administrative proceeding depends upon the character of the proceeding and the circumstances involved. Ordinarily, it is only when the proceedings are judicial or quasi-judicial in nature that notice is constitutionally mandated. Morgan, supra; and 73 C.J.S. Public Administrative Bodies § 130.
We are not presently confronted with the question of the necessity or desirability of notice at the initial rate hearings themselves. The present petition for attorneys' fees, however, must be deemed adversary and judicial in nature. Thus, because Brantley sought fees from the fund set aside for the subscribers (each of whom had an ascertainable, pecuniary interest therein), notice must be given these parties.
It cannot be denied that originally the proceedings were merely legislative-type hearings which were not adversary in nature. See City of Birmingham v. Southern Bell Telephone and Telegraph Co., 234 Ala. 526, 176 So. 301 (1937). Therefore, notice given at that time could not adequately inform the subscribers of possible adversary proceedings in the future. The subscribers were either to be charged a higher rate or they were not. Once a fund was created and payable to them, however, the proceeding became adversary when Brantley sought to obtain fees therefrom. The ex parte nature of these proceedings requires notice before such cause deprived the subscribers of certain property rights without notice; and, thus, violated the mandate of procedural due process. See generally, Vaughn v. State, 17 Ala.App. 35, 81 So. 417 (1919).
For the reasons set forth herein, and for the further reasons contained in the Per *617 Curiam opinion, I would dismiss the petition and render the cause.
FAULKNER, J., concurs.
NOTES
[1] § 37-1-125, Ala.Code 1975.
[2] § 37-1-132, Ala.Code 1975.
[3] § 34-3-60, Ala.Code 1975.
[4] Several other states do allow recovery of attorney's fees from supersedeas bonds created in circumstances similar to those before us. It should be noted, however, that this recovery is specifically authorized by statute in those states. See Joseph Denunzio Fruit Co. v. Crane, 79 F.Supp. 117 (S.D.Cal.1948) (applying Tit. 7, U.S.C.A., § 499g(c)); and 73 C.J.S. Public Administrative Bodies § 255.
[5] § 37-1-135, Ala.Code 1975.
[1] § 37-1-87, Ala.Code 1975.
[2] Rule 24, ARCP.
[3] It is not to be understood that I would hold that Bishop may not recover his fees from his clients. It is only the recoverability of this fee from the supersedeas fund with which I now deal.
[4] Brantley's original contract has already been honored by his individual clients and the fees for his legal services, in accordance therewith, have been paid in full.