447 So.2d 752 (1983)
Edward A. JOHNSTON
v.
STATE PERSONNEL BOARD OF ALABAMA, Department of Corrections for the State of Alabama, Governor George C. Wallace, Governor of Alabama.
Civ. 3916.
Court of Civil Appeals of Alabama.
December 7, 1983.
Rehearing Denied January 11, 1984.
Certiorari Denied March 23, 1984.
*753 Richard A. Lawrence, Montgomery, for appellant.
Charles A. Graddick, Atty. Gen., and Richard N. Meadows, Asst. Atty. Gen. for Appellee State Personnel Bd., Jacquelyn Lufkin Stuart, Special Atty. Gen., for Appellee Dept. of Corrections, Montgomery, for appellee.
Alabama Supreme Court 83-465.
WRIGHT, Presiding Judge.
This is an appeal of an administrative decision terminating employment.
*754 At approximately 10:15 A.M. on June 23, 1982, Edward A. Johnston, a correctional officer at Kilby Corrections Facility, was assigned to tower four and charged with the duty of watching the prison's fence. At that time, Johnston's supervisor, Lt. Amos Lewis, noticed him sitting in the tower with his head down as if asleep. Lewis left momentarily and returned with the Assistant Director of the Investigative Division, Rodney L. Manning. Both men then observed Johnston sitting head down for approximately three and one-half minutes.[1] Lewis and Manning entered the tower and asked Johnston if he had been sleeping. Johnston denied sleeping but admitted that, because of a sore neck, his head had been down and that he had seen no one, including Lewis, near his tower in one and one-half hours. He also admitted that he had failed to follow procedures by not reporting his neck pain to his shift commander. This incident was reported to Captain Murdock and Deputy Warden J.E. Murphy. Murdock relieved Johnston from his post for the day and told him to leave the institution. Upon Johnston stating that he had no transportation home, Murdock told him to remain in the main lobby until the two o'clock shift change. At 12:02 P.M. Johnston was observed in central control, an area restricted to those authorized by the shift commander or a higher level officer. When questioned about being there without permission, Johnston stated that he had been attempting to use the telephone. Telephones were available in the lobby.
On July 8, 1982, Johnston was notified by written memorandum from Murphy that his termination was being recommended. He was informed that the allegations against him, being inattentive at his post and entering central control after being told to remain in the lobby, constituted violations of paragraphs 7B, 7C and 8 of Board of Corrections Administrative Regulation 207. These paragraphs provide in pertinent part that Board of Corrections employees are expected to:
"7BRender full, efficient, and industrious service.
"7CRespond promptly to directions and instructions.
. . . .
"8Each officer's and employee's conduct shall, at all times, be consistent with the maintenance of the proper security and welfare of the institution and of the prisoners under his or her supervision."
He was also advised of his right to written rebuttal of the charges and of his right to a hearing at which he would have the right to counsel and the opportunity to cross examine.
On August 4, 1982, Board of Corrections Administrative Board Number One met and found Johnston guilty of violating Administrative Regulation 207, paragraphs 7B, 7C and 8. On August 17, 1982, Johnston was informed by Joe S. Hopper, Board of Corrections Commissioner, that the Board had found him guilty of the following:
"1. Failure to render full, efficient and industrious service (Paragraph 7B, Administrative Regulation 207 and Item 15, Annex E, Administrative Regulation 208).
"2. Failure to respond promptly to directions and instructions (Paragraph 7C, Administrative Regulation 207 and Item 5, Annex E, Administrative Regulation 208).
"3. Failure to conduct yourself consistent with the maintenance of proper security and welfare of the institution and prisoners under your supervision (Paragraph 8, Administrative Regulation 207 and Item 15, Annex E, Administrative Regulation 208)."
The letter again stated that:
"These charges stem from your not being fully attentive while posted to Tower # 4 on or about 10:15 a.m., June 23, 1982, *755 thereby breaching the security of the Kilby Corrections Facility. After being released from your post and told to go home, or wait in the main lobby for your ride, you entered Central Control to use the phone."
The letter mentioned additional considerations supporting dismissal, including marginal work performance and numerous reprimands for absenteeism. Hopper informed Johnston that, based on these findings and considerations, he had approved the Board's action and ordered Johnston's dismissal effective August 27, 1982. Johnston was also informed of his right to appeal to the State Personnel Board.
Johnston appealed, and a hearing was held before a personnel board hearing officer on December 13, 1982. The hearing officer filed his report with the personnel board, stating:
"The main charge against Mr. Johnston was the charge of sleeping on his post. In the opinion of the Hearing Officer, this charge was not proved, although Mr. Johnston did admit being inattentive, brought about by neck problems which he did not report. As far as the charge of being late on several occasions, testimony was that Mr. Johnston did report in with the proper officials on each occasion. As far as using a telephone in central control, it is the belief of the Hearing Officer that Mr. Johnston did not know this was wrong.
"It is the opinion of this Hearing Officer that the punishment against Mr. Johnston was too severe. The Hearing Officer also recognizes that the 240 hours of law enforcement training is expensive to the State, and any officer who has had it should be salvaged if possible. It is recommended that the dismissal be changed to a suspension if the Personnel Board has such power. If not, the Hearing Officer's recommendation is that Mr. Johnston be reinstated to his position with full back pay."
On February 16, 1983, after hearing oral arguments, the personnel board upheld Johnston's termination. Johnston's request for rehearing was denied. After the Circuit Court of Montgomery County denied his petition for writ of certiorari, Johnston appealed here. He asserts that (1) the personnel board and trial court made an improper application of the findings viewed in a legal sense, and that (2) he was denied due process of law. We disagree.
The controlling statute in this situation is § 36-26-27, Code of Alabama 1975, which states in pertinent part:
"An appointing authority may dismiss a classified employee whenever he considers the good of the service will be served thereby, for reasons which shall be stated in writing, served on the affected employee and a copy furnished to the director, which action shall become a public record. The dismissed employee may, within 10 days after notice, appeal from the action of the appointing authority by filing with the board and the appointing authority a written answer to the charges. The board shall, if demand is made in writing by the dismissed employee within 10 days after notice of discharge, order a public hearing and, if the charges are proved unwarranted, order the reinstatement of the employee under such conditions as the board may determine."
Both parties agree with our previous holdings in Stewart v. Hilyer, 376 So.2d 727 (Ala.Civ.App.1979), and Hilyer v. Blackwell, 377 So.2d 1090 (Ala.Civ.App.), cert. denied, 377 So.2d 1092 (Ala.1979), that dismissal by an appointing authority, in this case the Commissioner of the Department of Corrections, is reviewable by the personnel board only to determine if the reasons stated for the dismissal are sustained by the evidence presented at the hearing. The Board of Corrections contends that the hearing officer and the personnel board correctly found the charges against Johnston sustained. Johnston argues that the hearing officer found them unwarranted and further argues that the personnel board would have reached the same conclusion but for its misunderstanding of the charges and the hearing officer's findings. *756 We find no indication that the personnel board misunderstood the charges or the hearing officer's findings.
The principal charge against Johnston, as plainly set out in Deputy Warden Murphy's memo and again in Commissioner Hopper's letter, was based upon his being "inattentive" not upon his being asleep at his post.[2] His inattentiveness alone, if proved, was a sufficient ground to warrant his dismissal under Administrative Regulation 207, Paragraphs 7B and 8 and under Item 15, Annex E to Administrative Regulation 208.[3] It is undisputed that this allegation was proved and that such a finding by the Board of Corrections and personnel board is supported by the record. We would point out that the hearing officer, although incorrectly believing that the principal charge was sleeping on duty, reached the same conclusion, finding Johnston, by his own admission, guilty of inattentiveness.
The hearing officer's opinion that the punishment was too severe is of no effect. Only if the charges had been unwarranted could Johnston have been reinstated with a lesser punishment. Hilyer, supra at 1091. These charges being warranted, the hearing officer had no authority to recommend a lesser penalty.
We find no error in the circuit court's denial of certiorari. Although certiorari is the proper method of review, Stewart, supra, at 729, such a writ is discretionary in order to promote the ends of justice. M.W. Smith Lumber Co. v. Alabama Public Service Commission, 247 Ala. 318, 24 So.2d 409 (1946). Our review of a denial of certiorari in cases of this nature is limited to a determination of whether there was any legal evidence before the Board to sustain its findings. Roberson v. Personnel Board, 390 So.2d 658 (Ala.Civ.App.1980). We find there was.
We also find no support for Johnston's argument that he was denied due process. He asserts that § 36-26-27, Code of Alabama 1975 requires that an employee be given written notice prior to his termination and that Administrative Regulation 208, paragraph (c)(4)(a)(3) requires that such notice, when given to a permanent employee of the Department of Corrections, must refer to one or more of the charges contained in Annex E of Administrative Regulations 208, which states in pertinent part that written notice must, "state the specific rules or regulations violated to include items listed in Annex E as appropriate." The terms "to include" and "as appropriate" indicate a desire to encourage the use of Annex E but not to require reference to it. The law does not require that the charges filed before administrative boards be drawn with the same refinements as pleadings in court. All that is required is that the charges given be sufficient to warrant dismissal and specific enough to apprise the employee of the allegations against him. Simpson v. Van Ryzin, 289 Ala. 22, 265 So.2d 569 (1972). Both Deputy Warden Murphy's memo and Commissioner Hopper's letter met these requirements. Johnston's contention, that he was denied due process by Commissioner Hopper's making the final decision to terminate him without having been present at the Administrative Board's hearing, is not accepted. His presence is not required by statute, § 36-26-27, Code of Alabama 1975, or by Board of Corrections Administrative Regulation 208. In view of the fact that Johnston received three hearings, we perceive no violation of due process.
AFFIRMED.
BRADLEY and HOLMES, JJ., concur.
NOTES
[1] Johnston later admitted that sitting in this position would have prevented him from seeing an escape attempt.
[2] We do not address the issue of Johnston's improperly entering central control since that allegation, constituting a violation of Administrative Regulation 207, Paragraph C, was not punishable by dismissal. Item 5 Annex E, Administrative Regulation 208.
[3] Item 15 mandates dismissal for negligent or careless work performance resulting in waste of public funds, damage to material, delay in production, injury or loss or danger of loss to life.