[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1326 
This is an appeal from the denial of a permanent injunction against the Alabama Public Service Commission whose orders, it was contended, violated the terms of the Uniform Disposition of Unclaimed Property Act. We reverse and remand.
On March 23, 1976 the Alabama Public Service Commission issued its order to Mobile Gas Service Corporation directing that company to follow a certain procedure in making refunds to its customers. Those refunds resulted from orders of the Federal Power Commission directing United Gas Pipeline Company, the supplier, to make refunds for gas sold to Mobile Gas Service Corporation, and by it to its customers, during the period June 1, 1971 through April 5, 1974. The aggregate sum to be refunded was $792,036.00, plus interest earned, less expenses incurred in obtaining the refunds and the distributions.
Specifically, the order of March 23, 1976 stated:
 The Commission desires that all of the net refunds, after the expenses hereinabove allowed, shall be paid to customers of the utility and no portion thereof shall be allowed to remain in any special account or be otherwise retained by Petitioner, nor shall any such funds be allowed to escheat to the State of Alabama whereby customers of Petitioner are deprived of the benefits of the refunds hereby directed.
. . . . .
 After the expenses hereinabove allowed, the entire principal and interest received from United shall be paid to customers of Petitioner and no portion thereof shall be allowed to remain in any special account or be otherwise retained by Petitioner, nor shall any such funds be allowed to escheat to the State of Alabama.
. . . . .
 Refunds made to existing customers shall be based upon the test period consumption hereinabove directed in Paragraph 3 and shall exhaust the funds received from United from refunds. Any refunds made to former customers not covered under the test period shall be paid out of the contingency funds by check. If said refunds by check exceed the contingency fund, such excess shall be treated as a current operating expense of the Petitioner. If there is any excess in said contingency fund, it shall be handled as set out in Paragraph 8 of this Order.
. . . . .
 All funds now remaining from the refunds ordered by the Commission on January 15, 1965, Informal Docket U-2127 and on July 26, 1972, Informal Docket U-2504, together with the sum of $2,500.00 from this refund, shall be held by Petitioner as a contingency fund from *Page 1327 
which to pay refunds claimed by prior customers or other claims not covered by this Order which Petitioner is found to be legally obligated to pay. In the event that such fund is insufficient to pay such claims, further amounts paid by Petitioner shall be treated as a current operating expense of the Petitioner. In the event that such fund is not completely expended, any remaining funds shall be held by Petitioner for distribution to its customers in accordance with future refund orders of this Commission.
The Commission amended its earlier order and made the following statements:
. . . No portion thereof shall accrue to the benefit of the Petitioner, nor shall any funds be allowed to escheat to the State of Alabama whereby customers of Petitioner are deprived of the benefits of the refunds thereby directed.
 Because the amount involved will average less than $5.00 per customer, the Commission desires to preserve said fund from unnecessary expense. To this end the Petitioner is directed to credit the April, 1976 bills of its then existing residential and commercial customers a refund based upon mcf consumption and to use a test period of the six-month period ending February 29, 1976. Except as further provided herein, only customers served during said six-month period who comply with the requirements of this order shall be entitled to said refunds, and no other present or former customers shall be entitled to receive any portion thereof.
. . . . .
 . . . It is the intent of this Commission that all funds received by the utility from United from any refunds, present or past, after allowable expenses, shall be under the control of this Commission and shall be distributed to customers of the utility in accordance with this and with future orders of the Commission and no portion thereof shall accrue to the benefit of the utility, nor shall the orders of the Commission be so construed as to provide for any "unclaimed" funds which could escheat to the State of Alabama.
Following the issuance of this order, Mobile Gas began distributing this refund and continued until a temporary restraining order was issued. Mobile Gas moved to dissolve the temporary restraining order, and after a hearing on that motion the trial court dissolved it and issued a preliminary injunction which, after a hearing on the merits, was dissolved. The request for a permanent injunction was denied, and this appeal followed from the final decree issued on April 27, 1976. The decision was originally appealed to the Court of Civil Appeals and subsequently transferred to this Court.
The Commissioner of Revenue contends that the order of the Public Service Commission contravenes the terms of the Uniform Disposition of Unclaimed Property Act, Title 47, §§ 314-342,Alabama Code. Specifically, he maintains that the portions of the order not allowing the funds to escheat, and not allowing the orders to be "so construed as to provide for "unclaimed" funds which could escheat" is void as beyond the power of that body to declare, and because those portions of the order attempt to repeal the express provisions of Title 47, § 317,Alabama Code.
The appellees, on the other hand, maintain that this action by the Commissioner of Revenue against the Public Service Commission is a collateral attack upon its properly performed rate-fixing authority; that there was no proof of any threatened substantial injury or the absence of a legal remedy which would have justified the issuance of an injunction, and that, in any case, no injunction could have issued without impaneling a special court of three judges.
The matter of the circuit court's power to issue the injunctive relief requested, without a special three-judge panel having been convened, was decided in Ex parte AlabamaTextile Manufacturers Association, 283 Ala. 228, 215 So.2d 443
(1968). After reviewing the nature of orders as they apply to the statutes governing appeals by public utilities, this Court held *Page 1328 
that the injunction cases referred to in Title 48, § 101 (1) do not apply to orders of the Alabama Public Service Commission dealing with "rates, fares or charges." Because the order in question affects refunds of "charges" based upon "rates," a three-judge court need not have been convened.
There is no question about the power of the legislature to legislate on the subject of abandoned property and its disposition, Sheppard v. Dowling, 127 Ala. 1, 28 So. 791
(1899); Newberry v. City of Andalusia, 257 Ala. 49,57 So.2d 629 (1952), nor can that power be delegated. Wallace v. Boardof Education of Montgomery County, 280 Ala. 635, 197 So.2d 428
(1967). Under its police power the legislature has created the Alabama Public Service Commission with specified powers and duties; however, like all statutory creations granted authority in derogation of common law, it has only the authority granted upon a strict construction of the statute creating it. AlabamaGreat Southern R. Co. v. Alabama Public Service Commission,210 Ala. 151, 97 So. 226 (1923).
The statutes empowering the Commission with authority to regulate utilities, to fix their rate charges, and to determine their fair net return do not authorize the Commission to extinguish the property rights of those who are served by those regulating utilities. In particular, the legislature has chosen to eliminate from the language of the statutes containing the Commission's powers any reference to unclaimed or abandoned property. That specific subject is encompassed in the Uniform Disposition of Unclaimed Property Act which, inter alia, expressly provides in Section 317:
 The following funds held or owning [owing] by any utility are presumed abandoned:
. . . . .
 (b) Any sum which a utility has been ordered to refund and which was received for utility services rendered in this state, together with any interest thereon, less any lawful deductions, that has remained unclaimed by the person appearing on the records of the utility entitled thereto for more than two years after the date it became payable in accordance with the final determination or order providing for the refund.
From the literal terms of this statute it is clear that the legislature has recognized the existence of a property right in sums "held or owing" by a utility. These become "abandoned" (after applying interest earned and deductions) at the expiration of two years following the refund order in which they are applicable, and as such their dispositions are governed by directions contained in Section 324 and those sections which follow it. In view of this plain legislative declaration, it is legally impossible for the Commission to declare, as it has attempted in its amended order, that its order shall not be "so construed as to provide for any `unclaimed' funds," for this would arrogate to the Commission a legislative power not only outside its authority but one plainly having been exercised by the legislature itself.
The powers of the Commission to determine whether refunds should be made, and to identify those customers to whom they should be made, are not in issue here; indeed, the appellant in brief concedes this much. But once the Commission makes a "final determination or order providing for a refund," to use the statutory language, those customers, known or unknown, easily identified or difficult to locate, are entitled to their share which constitutes a chose in action. Peavy Lumber Companyv. Murchison, 272 Ala. 251, 130 So.2d 338 (1961). Should these remain unclaimed for more than two years, the provisions of the Uniform Disposition of Unclaimed Property Act control them.
It follows, therefore, that the portion of the Public Service Commission's order of April 8, 1976 which attempts to circumscribe, if not abrogate, the effect of Title 47, § 317, is void, and being void, is subject to this collateral attack by the Commissioner of Revenue. Alabama Water Co. v. City ofAttalla, 211 Ala. 301, 100 So. 490 (1924). *Page 1329 
The general principle which militates against the issuance of injunctive relief against a government agency cannot apply when such an agency acts outside its powers to threaten irreparable injury. Lehmann v. State Board of Public Accountancy, 208 Ala. 185,94 So. 94 (1922). The complaint in this case incorporated the Commission's orders of March 23, 1976 and April 8, 1976. These referred to funds received by the utility (Mobile Gas) from refunds, present or past, and "funds now remaining from refunds ordered by the Commission on July 26, 1976, Informal Docket U-2504. . . ." These allegations, together with those to which we have alluded earlier, threaten irreparable injury to the Commissioner of Revenue, since without injunctive relief he may be rendered unable to perform his obligations under the Unclaimed Property Act on behalf of those claimants, known or unknown, whose present property interests he is obliged to secure. Moreover, without injunctive relief, the terms of the order of April 8, 1976 could cause a situation which would thwart the Commissioner of Revenue, for there might be no funds available to former customers who could not be located within two years, but who would be eligible to make claims to the Commissioner thereafter.
For these reasons, the decree of the circuit court is reversed and the cause is remanded to that court for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
TORBERT, C.J., and MADDOX, FAULKNER and SHORES, JJ., concur.