SHORES, Justice.
This is an appeal by Alabama Power Company from a rate order of the Alabama Public Service Commission, entered on August 14, 1981. Alabama Power filed with the Commission on January 20, 1981, a revised rate schedule and a new rate schedule, with a proposed effective date of March 1, 1981, pursuant to Ala.Code 1975, § 37-1-81(a). The rate schedule: (1) increased the charge for collection services from $1.00 per call to $3.00 per call; (2) increased the charge for connection services from $3.00 per connection to $5.00 per connection; (3) increased the charge for reconnection services from $3.00 per reconnection to $9.00 per reconnection; and (4) incorporated the changes required by the Commission’s order in APSC Docket No. 17752, which dealt with the service standards of the Public Utility Regulatory Policies Act of 1978 (“PURPA”).
By order of February 2, 1981, the Commission ordered the schedules suspended through August 31, 1981, and ordered a public hearing.
At the hearing on March 6, 1981, five exhibits were accepted into evidence:
Exhibit 1: Alabama Power’s filing letter with revised tariff Rule 20 and new tariff Rule 24 attached;
Exhibit 2: The prepared testimony and cost study of Alabama Power’s witness, Ernest Glass, Jr.;
Exhibit 3: Recommendation 30 of the 1978 Price Waterhouse and Company audit of Alabama Power’s entire operation, which states:
“The amount of fixed fee charges that can be identified and billed to customers does not cover the actual costs the Company incurs in providing special services such as (a) collection calls, (b) service connections, and (c) service reconnections. We estimate that last year the difference between actual costs of these three services and the fixed fees received for them was at least $1 million. We recommend that the Company and the Public Service Commission review these fixed fee charges on a periodic basis to determine whether they cover the actual costs incurred by the Company to provide such services. Periodic revision of the fixed fee charge would ensure that the cost of those services is borne by customers who use them.”
Exhibit 3(a): 1980 Price Waterhouse and Company follow-up study comments upon Recommendation 30.
Exhibit 4: Tariff Rule 20 as it was before Alabama Power’s filing.
The participants at the public hearing were members of the Commission staff (the Commission itself was not present), the Attorney General’s office, and Alabama Power.
The position of Alabama Power, as summarized in the testimony of Ernest Glass, Jr., the assistant comptroller, is as follows:
“Well, briefly, the experience of the company has been that we are incurring increasing costs in the performance of certain specific work relating to the establishment of accounts, reconnection services and collection calls. It’s been several years since these costs have been updated, and it is our view that the costs of *1262 these services to customers should be borne by those that cause them to be incurred as opposed to being subsidized by ratepayers generally.”
Mr. Glass was questioned by both the Attorney General’s office and the Commission’s staff. No other witnesses testified and no evidence has been offered or accepted since the March 6, 1981, hearing.
The Commission voted to reject the rate schedules insofar as they increase the identified charges and entered an order to that effect on August 14,1981. Alabama Power filed a motion requesting reconsideration or rehearing, upon which the Commission took no action.
This appeal followed. We affirm in part.
Alabama Power argues that the utility’s experience of out-of-pocket losses on collection, connection, and reconnection services constitutes confiscation. We disagree insofar as the costs of these services are included in the computation of the overall rate structure of the utility. Unprofitable services may not be singled out for review absent a showing that the costs incurred for these services are not being recovered through other rates. In other words, it is not mandatory that all rates be cost justified.
Ala.Code 1975, § 37-1-80, requires that rates must be “just and reasonable.” If the overall rate structure allows the utility to earn a fair net return, the statute is satisfied. As we stated in M.W. Smith Lumber Co. v. Alabama Public Service Commission, 247 Ala. 318, 24 So.2d 409 (1946), quoting Norfolk and W.R. Co. v. Conley, 236 U.S. 605, 35 S.Ct. 437, 59 L.Ed. 745 (1915):
“[I]t is not necessary that there should be uniform rates or the same percentage of profit on every sort of business; and .. . there is abundant room for reasonable classification and the adaptation of rates to the various groups of services.”
The overall rate structure of the utility was considered by this Court in Alabama Power Company v. Alabama Public Service Commission, 422 So.2d 767 (Ala.1982). Thus, this appeal was subsumed in part by that case.
Alabama Power next argues that the rule change ordered by the Commission to prohibit collector’s calls on delinquent accounts prior to termination notice was ordered without proper notice and hearing in violation of Ala.Code 1975, §§ 37-1-83, -86, and the company’s constitutional rights. We need not address that issue because we agree with Alabama Power that, in any event, such an order by the Commission improperly interferes with management prerogatives and the efficient operation of the company.
The Commission’s power is limited to that power granted under a strict construction of the enabling legislation. Boswell v. Whatley, 345 So.2d 1324 (Ala.1977). Under Ala.Code 1975, § 37-1-80, the utility has the right not only to just and reasonable rates, but also to collect such rates “under honest, efficient and economical management.” This right allows the utility to operate consistent with the free enterprise system to the extent possible. “The function of the Commission is that of regulation, and not of management” and the Commission “should not be allowed to interfere with the proper operation of the utility as a business concern by usurping managerial prerogatives.” Alabama Power Co. v. Alabama Public Service Commission, 359 So.2d 776 (Ala.1978).
We hold that the dispatching of collectors to call upon delinquent accounts is a managerial prerogative not to be usurped by the Commission and, therefore, reverse the order of the Commission to that extent.
AFFIRMED IN PART; REVERSED IN PART.
TORBERT, C.J., and FAULKNER, JONES, ALMON, EMBRY, BEATTY, and ADAMS, JJ., concur.