BEATTY, Justice
(dissenting):
This is a direct appeal by Charles A. Graddick, as Attorney General of the State of Alabama, pursuant to Code of 1975, § 37-1-140. The appeal is taken on behalf of the State and the affected customers of Alabama Gas Corporation (Alabama Gas or the Company) challenging orders of the Alabama Public Service Commission (the Commission) dated January 25 and 27,1983, in APSC Dockets 18046, 18328, and 18622. These three rate proceedings were initiated by Alabama Gas, and APSC Dockets 18046 and 18328 were the basis of previous appeals to this Court, Supreme Court Case Nos. 80-686 and 81-804, respectively. The orders from which this appeal originates provide the purported resolution by settlement of these two appeals which were taken by Alabama Gas from the Commission’s original orders in 1980 and 1981.
This Court released its opinion and order in Case No. 80-686 on November 5, 1982 (Alabama Gas Corporation v. Alabama Public Service Commission, 425 So.2d 430 (Ala. 1982)), in which the Court reversed and remanded to the Commission with instruction the Commission’s order in Docket 18046. The Commission then notified the parties to the two rate cases that it would call them to public discussion for the purpose of attempting to settle the remanded cases (Docket 18046, Supreme Court No. 80-686) and the case then pending before the Court (Docket 18328, Supreme Court No. 81-804).
Petitions for intervention were received from the Attorney General of the State of Alabama; Mr. John Ripp; and Clara Hall, Luvenia Blevins, and Bessie Trimble, represented by Legal Services Corporation of Alabama. The above were determined to be affected by these proceedings pursuant to Code of 1975, § 37-1-87, and were permitted to intervene. Following five days of proceedings held between December 13, 1982, and January 13, 1983, the Commission agreed with Alabama Gas to resolve the pending cases according to the following terms:
“(a) The final and legal rates would be found by reducing the rates which had been approved to collect the $14 million increase in revenue which the Court had permitted, subject to supersedeas bond, by $1.5 million effective from July 4, 1982 — a $12.5 million increase;
“(b) The Company would refund to its customers by check the total sum of rates collected in excess of the $12.5 million *587 rate increase level (i.e., pursuant to the Court’s supersedeas order), and pipeline supplier refunds of approximately $13 million then being held by the Company in constructive trust for its customers, less the cost to the Company of making the refund;
“(c) The Company would compute its depreciation expense on its books and records in accordance with the depreciation rates by plant account developed by the Public Staff’s witness in Docket 18328 using the remaining life methodology and estimated net salvage; and
“(d) Commencing with bills dated October 1, 1983, the Company’s rates and charges would be changed, if necessary, pursuant to the formula of the ‘Rate Stabilization and Equalization Factors (RSE).’ The Company is not to file any new general rate increase application pri- or to January 1, 1985.” (Footnote omitted.)
The purpose of the orders was to rectify the Company’s revenue deficiencies proved in Dockets 18046 and 18328 and to provide prospective regulations. The Commission and the Company reached the settlement without agreement by any of the interve-nors. In fact, each intervenor stated concerns and objections respecting the propriety of the Rate Stabilization and Equalization Factors (RSE) for setting rates and charges of Alabama Gas.
On February 17,1983, the Attorney General filed his notice of appeal from the Commission’s orders of January 25 and 27, 1983. The appeal alleges that the orders approving RSE as the vehicle for changing the Company’s rates are void.
A joint motion was then filed with this Court seeking to remand the case for the limited purpose of allowing the Commission to order the refund portion of the Commission’s January 25, 1983, order to proceed. This Court, granting remand on March 31, 1983, ordered “that the appeal of Charles A. Graddick, as Attorney General, as it relates to the rate RSE portion of the order of the Alabama Public Service Commission of January 25, 1983, shall proceed.”
I emphasize the fact that this case does not come before this Court in the usual posture of a rate case. It is clear that the Attorney General neither contends that the Company’s present charges are unfair and unreasonable, nor does he argue that the increase in revenues allowed here is excessive or not supported by the law of evidence. Because of this unusual posture, this Court is not concerned with the validity of the RSE or with the fairness or reasonableness of the rates in the present cases. Perhaps RSE is in fact or is substantially similar in operation to an automatic adjustment clause. Its purpose is to provide for periodic limited adjustments (increases or decreases) to the Company’s charges for gas service. The validity of the RSE as a formula for determining fair and reasonable rates, however, is not in issue here. Instead, the sole issue presented for review by this Court is the propriety of the Commission’s promulgation of the RSE.
More specifically, the Attorney General raises the following issues on appeal:
1. Whether the adoption of the RSE is within the Commission’s statutory authority-
2. Whether the adoption of the RSE violates the intervenors’ right to due process regarding investigation, notice, and hearings.
3. Whether the Commission’s order promulgating the RSE is based upon the record evidence.
4. Whether the Attorney General’s appeal herein presents a justiciable controversy ripe for decision by this Court.
I
The dispositive issue presented for review by this Court is whether the Commission exceeded its statutory authority in its adoption of the RSE. The Commission has only such power and authority as is clearly conferred by statute. Alabama Great Southern Railroad Co. v. Alabama Public Service Commission, 210 Ala. 151, 97 So. 226, 228 (1923); Railway Express Agency v. Alabama Public Service Commission, 265 *588 Ala. 369, 91 So.2d 489, 491 (1956); Boswell v. Whatley, 345 So.2d 1324 (Ala.1977); Alabama Power Co. v. Alabama Public Service Commission, 421 So.2d 1260, 1262 (Ala. 1982). Further, the authority and power of the Commission must be sought in the statutes alone and these statutes must be strictly construed since the Commission is a statutory creation. Id. “This means simply that' the Public Service Commission can assume only such powers and exercise only such prerogatives as are clearly granted to it by the Legislature, and that its authority will not be extended by doubtful inference or intendment.” Alabama Great Southern Railroad Co., supra, 210 Ala. at 153, 97 So. at 228.
This Court held in Boswell v. Whatley, 345 So.2d 1324 (Ala.1977), that orders of the Commission which attempt to circumscribe or abrogate legislative directions are void. Thus, when the Commission undertakes to act in a fashion not envisioned in its statutory prescription of powers, its action is void and without effect. More clearly stated, a Commission order which is unauthorized by law or without or in excess of legal authority is void. Railroad Commission v. Alabama Great Southern Railroad Co., 185 Ala. 354, 359, 64 So. 13, 15 (1913); Alabama Great Southern Railroad Co., supra, 210 Ala. at 152-53, 97 So. at 227.
Having emphasized that the Commission must follow its legislative mandate, this Court must look to Code of 1975, § 37-1-80 through § 37-1-105, entitled “Rates and Other Regulations,” to determine if the RSE falls within the statutes as contemplated by the legislature. Specifically, § 37-1-81 sets out a procedural scheme to be followed by a utility seeking to change existing rates. Section 37-1-81 reads as follows:
“(a) Whenever a utility desires to put in operation a new rate or service regulation or to change any existing rate or service regulation, it shall file with the commission a new schedule embodying the same, not less than 30 days prior to the time it desires to make the same effective; but the commission may, upon application of the utility, prescribe a less time within which the same may be made effective. In the absence of suspension or disapproval by the commission, as herein provided, the new rate or service regulation embodied in any such new schedule shall become effective at the time specified in such schedule, subject however to the power of the commission at any time thereafter to take any action respecting the same authorized by this title.
“(b) To enable it to make such investigation as, in its opinion, the public interest requires, the commission, in its discretion, for a period not exceeding six months may suspend the operation of any new schedule of rates or service regulations filed with the commission. Unless as a result of its investigation the commission otherwise orders before the termination of such period of six months, such rate or service regulation shall thereupon become effective. The Commission may make any order in the premises which it is authorized by any of the provisions of this title to make in any investigation or complaint or on its own motion without complaint.”
The Attorney General contends that the RSE method of setting natural gas utility rates is similar to that provided by statute for “new statutory findings,” but that it is not the statutory procedure and it differs in at least three fatal respects. He spells out the following in brief:
“First, § 37-1-81 Code, provides that ‘[wjhenever a utility desires to put in operation a new rate or service regulation or to change any existing rate or service regulation, it shall file with the commission a new schedule embodying the same, not less than 30 days prior to the time it desires to make the same effective.’ (Emphasis supplied.) The Commission in its Order asserts that ‘Rate RSE’ is an improved procedure for changing rates, but ‘Rate RSE’ does not require the filing of a new schedule embodying the changes in existing rates that it effects not less than 30 days prior to the time that the *589 same are effective as required by § 37-1-81, Code.
“Second, when a utility applies under § 37-1-81, Code, to change its existing rates, the Commission must exercise its discretion whether: i.) if the utility has requested that the proposed changes in existing rates take effect in less than 30 days’ time, to approve such request; ii.) to allow the requested changes to take effect without any action or interference by the Commission (i.e., thirty days after the filing); or iii.) to suspend the requested changes in rates for a period up to six months so that the Commission may conduct an investigation. These decisions reasonably can be made only at the time that the application is filed to change existing rates. State ex rel. Consumers Council v. Public Service Commission, 585 S.W.2d 41 (Mo.1979); State ex rel. Missouri Water Co. v. Public Service Commission, 308 S.W.2d 704 (Mo.1957). Under the ‘Rate RSE’ procedure the Commission has bargained away the option to use its discretion in accord with the statutory scheme. It has already committed respecting each quarterly change in rates: i.) to permit the changes to be filed less than thirty days prior to the time they are to take effect (i.e., ‘no less than 28 days'); ii.) to allow the proposed changes to become operative without interference by the Commission; and iii.) not to suspend the requested changes in rates in order to conduct an investigation.
“Thirdly, focusing on the provision in § 37-l-81(b) that provides that ‘to enable it to make such investigation as, in its opinion, the public interest requires, the Commission, in its discretion, for a period not exceeding six months may suspend the operation of any new schedule of rates or service regulations filed with the commission,’ the Company and Commission are aware that ‘Rate RSE’ reversed the ‘suspend and investigate’ order established in the statute and substitutes an automatic ‘change, investigate and refund’ scenario in its place. The Company’s awareness of the reversal of the statutory order is betrayed in a footnote in its brief:
“ ‘Although the Special Rules do not provide for suspension of the operation of Rate RSE, the Commission, following either plenary or limited proceedings, may order an adjustment to compensate customers for temporary charges in excess of those properly determined pursuant to Rate RSE. The availability of this compensation adjustment is, in essence, substantially similar to the Commission’s statutory ability to suspend the effective date of statutory rate filings.’ Company’s brief 56. (Emphasis supplied.)”
This Court has held that neither the Commission nor the courts, in the ratemaking process, have any liberty to ignore the standards set up by the legislature or to substitute a formula of their own, however meritorious (or easier) such formula may be. Alabama Public Service Commission v. Southern Bell Telephone & Telegraph Co., 268 Ala. 312, 106 So.2d 163 (1958).
The Company and the Commission cite Code of 1975, §§ 37-1-31 and 37-1-32, as providing the Commission the exclusive rights, powers, authority, jurisdiction, and duties with respect to rates and service regulations by public utilities. Further, they contend that § 37-1-56 authorizes the Commission to “prescribe such changes in the form in which the schedules and service regulations are issued by any utility as may be found to be expedient.” Section 37-1-56. They contend that these statutes clearly vest the Commission with very broad jurisdictional powers and authority to regulate public utilities. I find no fault with this conclusion and agree wholeheartedly as far as it goes. However, I cannot agree that these statutes, which provide the general obligation of regulatory authority, provide the Commission the authority to adopt the RSE in violation of the legislatively mandated procedures for rate change regulations as spelled out in § 37-1-81.
As stated earlier, the Commission is of statutory creation and the statutes alone prescribe its authority and powers. The Commission may not ignore or repudiate *590 that scheme, for that statutory scheme is the Commission’s only grant of authority to establish utility rates. Wichita Railroad & Light Co. v. Public Utilities Commission of the State of Kansas, 260 U.S. 48, 43 S.Ct. 51, 67 L.Ed. 124 (1922).
There is much discussion by the Company and the Commission in brief as to how fair and reasonable the RSE is in its formula for the adjustment of utility rates. Further, much is said regarding the effectiveness of the RSE and similar “adjustment clauses” in other states. But the question of fair and reasonable rates is not at issue here. It may or may not be true that the RSE is the answer to the problems facing the Commission with regard to utility regulations. However, the legislature by statute has provided the scheme that the Commission must follow in adopting utility rate changes. The RSE does not comply with the procedures which have been prescribed. Therefore, I conclude that in adopting the RSE the Commission has exceeded the statutory authority granted it by the legislature. Authority to allow such a deviation from the procedures which must be followed when the Commission faces requested rate changes must come from the legislature. It is not for this Court, nor for the Commission itself, to legislate in extending the authority provided by statute when the language and intent of that statute is clear. The orders issued by the Commission on January 25 and 27, 1983, establishing the RSE as the formula to provide for future rate changes for Alabama Gas are therefore void.
II
Although the Commission’s January 25 and 27,1983, orders are void with regard to their adoption of the RSE, it is appropriate also to discuss the other issues raised by the Attorney General.
Whether the adoption of RSE violates the due process of the intervenors regarding investigations, notice, and hearings certainly merits comment. The Attorney General’s contentions that, the intervenors’ rights to notice and hearings were violated in the adoption of RSE on January 25, 1983, are correct, and moreover, the prospective operation of the RSE will violate statutory provisions of due process. It is elementary that due process requires that all parties be given notice and an opportunity to be heard.
“When the rate making agency of the State gives a fair hearing, receives and considers the competent evidence that is offered, affords opportunity through evidence and argument to challenge the result, and makes its determination upon evidence and not arbitrarily, the requirements of procedural due process are met....” Railroad Commission of California v. Pacific Gas & Electric Company, 302 U.S. 388, 393, 58 S.Ct. 334, 338, 82 L.Ed. 319, 323 (1938).
That was not the case in the present proceedings.
Appellees assert that there was adequate notice to the Attorney General and the public of the settlement meetings and the topics, specifically RSE, under consideration. However, the December 7, 1982, notice sent by the Commission in relation to the settlement meetings stated that “[t]he purpose of the hearing is to take testimony and evidence as necessary in both cases in order to effect a settlement of all matters involved.” There was no mention of the fact that RSE would be discussed as a settlement strategy.
Next, appellees contend that all interve-nors were completely familiar with the RSE concept because they had participated for several months in hearings concerning the Alabama Power Company in which the RSE was adopted. As to whether the interve-nors “should have known” or were completely aware of RSE due to the adoption of the RSE in the Alabama Power Company case is not at issue. The intervenors were first informed of the RSE as a possible settlement strategy in this case on the first day, December 13, of five days of hearings. Through the full two-year course of the two cases, no notice was given that RSE would be considered. On December 14, the second day of settlement talks, the following statement of the Attorney General was quoted *591 by his representative at the outset of the hearing:
“[W]e have talked with the Attorney General. He has indicated to us that he did not wish for us to pursue a rate RSE type resolution in the case and we really have no option but to not participate in that type of resolution in this case.” (Emphasis added.)
Thus, the Attorney General’s statements during the hearing support his contention of nonparticipation and objection to the adoption of RSE. The Attorney General goes on to express his concerns as specified in his brief to this Court:
“Further, in response to the request of this Court that the Attorney General express his position respecting the Company’s and Commission’s request that S.C. Case No. 81-804 (APSC Docket No. 18328) be remanded to the Commission for the entry of an order upon stipulation and agreement, the Attorney General responded, in correspondence that was sent to all parties, that he was not a party to the motion for remand, or the stipulation and agreement, and that he was opposed to ‘Rate RSE.’ That response, in pertinent part, was as follows:
“ ‘We have no objection to a remand for the purpose of entering an order founded on the evidence and within the Commission’s authority.
“ ‘But, we must speak to the proposed settlement agreement which the Joint Motion indicates will be entered upon remand. Paragraph 4 of the ‘Settlement Agreement’ provides as follows:
“ ‘ “4. That the Rate Stabilization and Equalization Factors (RSE) provision of the Company’s Tariff attached hereto shall become effective on the date that a final order is signed in this case. The first change of rates, if necessary, will be effective with bills dated October 1,1983. The Company shall immediately file with the Commission tariff sheets containing the RSE when a final order is signed.”
“ ‘The Attorney General believes the Rate Stabilization and Equalization Factors (RSE) provision to be not a rate, but a comprehensive automatic adjustment clause which the Commission is without authority to approve. The RSE provision, if approved, will function to alter the Company’s rates without the filing of new tariffs, without the Commission exercising any discretion at the time of the changes in rates whether to suspend the operation of such altered rates and charges to permit an investigation of their reasonableness and fairness, and in the absence of the filing of a complaint by an affected party, without a hearing. Consequently, if upon remand, the Commission approves new tariffs embodying the so-called Rate Stabilization and Equalization Factors (RSE) provision, the Attorney General probably will take an appeal from such order.
“ ‘Please let me know if you need any further response.’
“Attorney General’s letter to Dorothy F. Norwood, Acting Clerk, January 21, 1983.”
Based on the preceding discussion, there was no adequate notice and participation affording the intervenors due process in the adoption of RSE. Additionally, it is difficult to recognize that a settlement was in fact reached when it is clear that the inter-venors were not parties to the stipulation and agreement. A review of the record further indicates a lack of the presentation of evidence to support appellees’ contention that the adoption of RSE was based on record evidence. This will be discussed later in my opinion.
Finally, with regard to due process as a concern for the prospective operation of RSE, I will not attempt to discuss the detailed operations of RSE. I do note as mentioned earlier in this opinion that RSE reverses the suspend and investigate order established in § 37-l-81(b) and substitutes instead an automatic change, investigate, and refund scenario in its place.
The Company and the Commission cite Choctaw County v. Alabama Public Service Commission, 368 So.2d 280 (Ala.1979), which says that no hearing is required prior to a new rate taking effect, but the Commission *592 must investígate and provide a full, fair, and public hearing only when a rate filing is suspended. I recognize that whether to suspend a rate filing is clearly within the discretion of the legislature. However, it has been held that the consideration of whether to suspend filed rates should include a review of all relevant factors. See State ex rel. Utility Consumers Council v. Public Service Commission, 585 S.W.2d 41 (Mo.1979); State ex rel. Missouri Water Co. v. Public Service Commission, 308 S.W.2d 704, 718-720 (Mo.1957). Similarly, a preference has been stated for suspension and rate ease hearings according to these two cases. This has certainly been the preferred and consistent course of action taken by this Commission in the past in regard to general rate increases.
When the Commission does suspend filed rates, as it did in the present cases involved in this appeal and as it has done in other general rate increases, the Commission must investigate. In such an investigation, the burden of proof is on the utility. Birmingham Electric Co. v. Alabama Public Service Commission, 254 Ala. 140, 47 So.2d 455 (1950). The concern of the intervenors is that an adoption of RSE will in effect shift the burden of proof to those persons who find themselves affected by these automatic rate changes. That position is well taken. Those parties who were intervenors in past rate cases must now come in as complainants, and the burden of proof rests with them instead of with the utility.
Under the prior practice, following a suspension of the filing, an investigation followed. As stated by the Attorney General, in brief, at that point:
“Any person affected may intervene, and the right to intervene and be heard may not be abridged. § 37-1-87, Code; Choctaw County v. APSC, 368 So.2d 280 (Ala. 1979); Mobile County Gas District v. Mobile Gas Service Corp., 284 Ala. 664, 227 So.2d 565 (1969). Provision is made for discovery. §§ 37-1-82, -92, Code. The Commission must give at least ten days’ notice of hearings, and all parties shall be entitled to be heard and to subpoena witnesses. § 37-1-86, Code. A full and complete record of the proceedings must be taken. § 37-1-102, Code. The Commission may make no order affecting any rate until a public hearing has been held. § 37-1-96, Code. The Commission must reach its decision on the evidence in the record before it. Alabama Power Co. v. APSC, 390 So.2d 1017. (Ala.1980). The question of what constitutes just and reasonable rates must be determined by exercising fair, enlightened and independent judgment in light of the relevant facts. Birmingham Electric Co. v. APSC, 254 Ala. 119, 47 So.2d 449 (1950). When the Commission determines an existing rate to be unreasonable, it shall by order fix, to the extent it is within its power to do so, a reasonable rate, fare or charge, and no utility may change the rate, fare, or charge so fixed without the approval of the Commission. 37-1-97, Code.” (Emphasis in original.)
This statutory scheme has been consistently utilized in providing for rate changes in the past, and RSE represents a departure which will not only shift the burden of proof in the proceedings but will also severely curb public input.
Ill
The next issue is whether there was record evidence to support the adoption of RSE. The Company’s and the Commission’s contention that there was record evidence cannot be accepted for two reasons. First, the record reflects that during the hearings no witnesses were called to present evidence or to be cross-examined on the concept of RSE. And, as stated earlier, through the full two-year course of the two cases, no notice was given or evidence taken with regard to RSE. Next, during these settlement hearings and the adoption of RSE, the administrative judge was without jurisdiction to take such evidence. This argument is borne out by the statements of the administrative judge himself at the outset of the December 13, 1982, conference:
“Let me hasten to add before we get started, we realize that these cases are now pending before the Supreme Court. *593 All parties know that the Court remanded 18046 to the Commission November 5, of this year. But, shortly after that, there was a petition, I believe, with the Court for reconsideration, which I would assume, but even that case is back before the Court. So, we — as I say, we realize they are before the Court.
“The notice mentioned taking further testimony and evidence. Of course we won’t attempt to do that today, but, if we are successful in arriving at an agreement, then it would naturally follow as I would envision it that a petition would go to the Court for a remand of both cases, and that then it might be necessary to take testimony and put evidence in the record or make a record, so that was the purpose of the hearing notice. Let’s for the purposes of the record this morning, take appearances at this time.”
Accordingly, the adoption of the RSE was not based on record evidence in this case.
In conclusion, the Public Service Commission has exceeded its legislative mandate in its adoption of the RSE. If the Commission’s position is, indeed, the proper method of present and future rate determinations, then the legislature might, perhaps, consider ways and means by which competitive rate forces are brought to bear on behalf of the consumer as an equalizing factor. I recognize and understand the desire of the Commission to simplify the procedures for changes in rates by utilities. But it is not for this Court, on the other hand, to affirm an order adopting a scheme for regulating changes in rates that is clearly not within the contemplation of the legislature. That the majority of this Court has seen fit to do so represents a departure from the basic order of our state government.